By the Court—Hoffman, J.
The principal question, the question which, if determined in one way, dispenses with the examination of every other, is whether the plaintiffs were warranted in revoking the letter of credit, as they did, on the 12th of June, 1857?
The 12th of June was (as admitted by stipulation read on the trial) the day of the actual revocation in New York. It had *47 been announced to Peabody & Company sometime between that day and the 18th of July, as appears by their letter of the latter date to the house in Dublin.
On the 12th of June, the draft for £404 8s., which should have been met with funds placed in the plaintiffs’ hands as early as the 28th of May, had not been provided for. Fourteen days had elapsed, and it was not paid until the 17th of June, twenty days after it should have been provided for. The Referee finds, that “ the defendant, on the 28th of May, 1857, and before the revocation of the letter of credit, failed to provide the plaintiffs at New York, one month previous to the maturity of a bill of £404 8s., drawn under such letter of credit, with funds sufficient to meet the payment thereof at its maturity in London.” The accuracy of this finding cannot be contested.
The plaintiffs remitted funds to London to meet this bill on the 9th of June, and it is stated, in evidence, that this was the latest period at which they could remit to provide' for the payment of the draft at maturity. This was the first draft under the letter of credit. It was for something more than a fourth of the whole amount.
The defendant, it appears, authorized Otard, Dupuy & Company to draw this bill. He was bound to inform himself of its amount, date and time, in order to comply with his engagement to the plaintiffs.
It appears to me clear, that the instruments of the 22d January, 1857, executed between these parties, are to be regarded together, as component parts of one contract and arrangement; and that the stipulations were dependent upon each other. Whenever there was anything to be done by the one party, which must be done prior in time to an obligation, to be fixed upon the other, it became a condition precedent, or an essential preliminary to the duty incumbent upon the other. Whenever an express and material stipulation should be violated by the defendant, the plaintiffs became exonerated from any farther obligation to perform any part of the contract which might remain incomplete.
Edgerton, the defendant, or other persons authorized by his written order, might have exhausted the whole of the credit of £1,500, in one draft, or in several drafts made at the same time. *48 The obligation of Edgerton which Winebrener guaranteed, would then have been, First, to have provided funds in Hew York one month previous to the maturity of the drafts, so that the plaintiffs could remit to London in time; or, second, to accept drafts of Peabody & Company on him, in favor of the plaintiffs at three months from the date of the acceptances of that firm. The drafts under the letter of credit were to be at four months; and counsel correctly observed, that in this view of the contract, the first, or the alternative mode of providing funds to meet the bills would be in the practical result the same.
But the bills were drawn, as it may have been expected they would be, at different times, and for various amounts. The security which the plaintiffs stipulated for by the pledge of bills of lading and policies, or the guaranty of Winebrener, related to the whole agreement, and to every part of it, which Edgerton was to perform. It was additional and collateral. It could not, as I think, interfere with any right which the plaintiffs might otherwise possess under the agreement, to revoke and rescind the letter of credit, upon a violation of such agreement, in any important particular, by the defendant.
The neglect of the defendant to furnish funds as agreed upon if justifiable, would produce the effect of an extension of credit to him for the period of fifteen days; of compelling the plaintiffs to raise money out of their own resources to remit to London, and to look to the obligation of the defendant to repay, for their indemnity. How that extension of credit is not merely not permitted by any just construction of the contract, but the contrary is manifestly its true import, and conforms to the obvious intention of the parties as disclosed by it.
If we examine these correlative stipulations upon the rules applicable to conditions precedent, on which the learned counsel have mainly presented the case, the doctrine which we find in Dakin v. Williams, (11 Wend., 67,) will decide the question. Courts lean against construing covenants to be independent, unless such is the obvious intent of the parties; and when the covenant on the one side goes to the whole consideration of that which is to be performed on the other, the failure of a party to fulfill the one, exonerates the other party from his obligation. The case of The Duke of St. Albans v. Shore, (1 H. Black., 270,) *49 is cited and relied upon by Chief Justice Nelson in deciding Dakin v. Williams.
What was the consideration of the stipulation to give this letter of credit ? It was the agreement to provide funds in anticipation in the manner prescribed—the agreement to give security by a lien on the bills of lading and policies of insurance—the guaranty of Winebrener, as well as the personal responsibility of the present defendant for the amounts to be drawn. All these constituted the consideration of the advance of credit. No one of them constituted it more than the other. The neglect to fulfill either, struck away the consideration of the engagement, and discharged the plaintiffs from it as effectually and completely as the violation or neglect of all. The rule is not, as I apprehend, that the stipulation as to which the failure takes place, formed the sole consideration, but that it was plainly as much the motive, and inducement to the promise, as anything else. In the Duke of St. Albans’ case, the trees were part of the consideration, and the cutting them down altered the estate to be conveyed, and discharged the party from the penalty, which was provided in case he broke his contract, by not taking the property.
But I think there is another ground upon which the case may be decided, apart from the technical learning of conditions precedent. In commercial transactions, exactness, promptitude, and precision in adhering to the plain requisitions of a contract is the ruling and fundamental principle of the law, and essential to commercial prosperity and safety. A Court of Justice can very rarely have a right to weigh the importance of particular stipulations, and to judge whether they are of moment, or matters of indifference. The parties have deemed them important, when, in express language, they have introduced them into their agreement.
I support this view by the case of Edmondston v. Drake; (5 Pet., U. S. R., 629;) a case which appears to me to involve principles decisive of the present action in favor of the plaintiffs. The letter of credit which was given by Edmondston in conjunction with the other "admitted documents, made out a case, of his guaranteeing the purchases of Draper & Company, of coffee, to a certain amount, to be consigned to Boyce & Company at Charleston for Hobson’s account; and for which Drake & Com *50 pany were to draw bills on Hew York, upon a particular firm, at sixty days. Drake & Mitchell, before the credit was exhausted, altered the mode of obtaining payment by drawing upon London at sixty days’ sight with the consent of Hobson, but without the consent of Edmondston. It was held, that he was not liable upon his letter of credit for such bills. “The change in the mode of payment by substituting a bill on London at long sight, necessarily prolonged the time at which payment should be made, and prolonged the risk of Mr. Edmondston. This, they had no right to do without his consent.”
The case, also, of Hyde v. Booraem, (16 Pet. U. S. R., 169,) appears to me quite pertinent to the present question. The doctrine of the commutative contracts of the civil law, as found in the Code of Louisiana, is entered into and discussed in the able 'opinion of Justice Story, and tends to show that where the entire fulfillment of the whole contract on the one side is the basis of the agreement on the other, the contract, is indivisible, and must be complied with in toto, or the other may dissolve the contract.
The judgment must be affirmed.
Judgment affirmed, with costs.